NATHANIEL BUCKMASTER, appellant, v. WILLIAM GRUNDY, et al. appellees.

*Appeal from Madison.*

Where a judgment has been rendered in a Court of Law, and it does not appear that it was obtained by fraud, or was the result of accident or mistake, a Court of Equity will not go behind such judgment.

Equity will allow one judgment to be set off against another, where there are no means for collecting it of the judgment creditor in the latter.

Interest is not allowable in the case of unliquidated damages arising *ex contractu.*

Where several persons agree to do certain acts, such as to pay equal proportions of particular expenditures, if one advance more money than his proportion of those expenses, the excess will be regarded as so much money paid for the use of the other parties, and he will be entitled to interest thereon.

A party cannot obtain a decree in Equity for a specific performance of a contract, where he has recovered damages at Law for a breach of the contract.

BILL IN CHANCERY, for relief, &c., filed in the Madison Circuit Court, by the appellant against the appellees, and heard before the Hon. Gustavus P. Koerner, at the October term 1846, when a special decree was rendered adjusting the equities of the parties. The complainant in the cause below appealed to this Court.

*T. Ford,* and *W. Martin* argued for the appellant. *D. Prickett,* upon the same side, filed a written argument.

*J. Gillespie, L. B. Parsons, Jr. & H. W. Billings,* for the appellees.

1. The injunction should have been dissolved in the Court below, and each party left to his remedy at Law, as the complainant elected to make his defence at Law, and having failed there he was precluded from going into Equity to litigate anew the same matters, unless he could show that the judgment was obtained by fraud, or that gross injustice had been done—not attributable to his own neglect, neither of which has been shown. *Abrams* v. *Camp,* 3 Scam. 291; *Buckmaster* v. *Grundy,* 1 do. 310.

Chancery will not relieve against a judgment on the ground of its being against equity, unless the defendant was ignorant of the facts of his defence, or they could not have been received in evidence. *Duncan* v. *Lyon*, 3 Johns. Ch. R. 356; *Lansing* v. *Eddy*, 1 do. 50; 2 Story's Eq. Jur. § 887, 894, 895, 897, and cases cited.

If the complainant had legal off sets, he should have produced them at the trial, and not suffered the defendant to obtain a judgment and then go into a long suit in Chancery, to enjoin and obtain a set-off that might have been done at Law.

If Courts of Law and Equity have concurrent jurisdiction and the parties consent to a trial at Law, Equity will not re-try the matter, and they will not only be bound by all the matters tried, but such as might have been acted on. *Baker* v. *Elkins*, 1 Johns. Ch. R. 465; *Andrews* v. *Fenton*, 1 Ark. 197–9; *Elston* v. *Blanchard*, 2 Scam. 421; *Lansing* v. *Eddy*, 1 Johns. Ch. R. 50; 2 Barb. & Har. Dig. 24, § 4; *Foster* v. *Wood*, 6 Johns. Ch. R. 89; *Le Green* v. *Gouvernour*, Ib. 492–5; *Cunningham* v. *Caldwell*, Hardin, 136; *Weirick* v. *De Zoya*, 2 Gilm. 385.

2. In an action of covenant like the one on which Grundy's judgment was obtained, Buckmaster might, under our statute, have set off his judgment against Grundy, as also any unliquidated damages arising from non-fulfilment of contract by Grundy. Rev. Stat. 416, Pr. § 19; R. L. 1833, 491; Barbour on Set-off, 105; 1 Chitty's Pl. 524, 607; *Simpson* v. *Hart*, 14 Johns. 75; *Edwards* v. *Todd*, 1 Scam. 463; *Nichols* v. *Ruckels*, 3 do. 299; *Kaskaskia Bridge Co.* v. *Shannon*, 1 Gilm. 25; *Duncan* v. *Lyon*, 3 Johns. Ch. R. 350.

3. Buckmaster's bond, to make Grundy a good title to the land, and Grundy's bond to expend $2,500 in improvements, made at the same time, ought to be regarded as dependent covenants, and taken together as a part of the same transaction; and as the land was so incumbered by a mortgage and right of dower as to render it impossible for Buckmaster to have made a good title according to his bond, and as Grundy might lose not only his purchase money, but also all

moneys expended in improvements. Buckmaster's failure to to make a good title released Grundy from his bond to expend $2,500. The interest of the parties must be derived from the whole transaction. 11 Pick. 154; 10 do. 250, 302. And in any event, the measure of damages, if any damages are allowed, would be—what advantage or gain it would have been to Buckmaster to have $2,500 more expended than was done, and which the depositions show was nothing.

4. The decree *pro confesso* as to Grundy, taken in 1834, could not in any case be taken advantage of in this late stage of the case; but, in this instance, it must be presumed to have been opened by consent, or on motion, as no final decree was even entered; the complainant goes on, and makes the administrator of Grundy and the heirs new parties, and the Court orders that they be permitted to answer to the merits of the bill.

5. The Court should have given a decree against the complainant for costs.

"Where a party might have defended at Law, he shall pay all costs both at Law and Equity." 3 Barb. & Har. Dig. 268, § 84; Ibid. 266, § 61; Ibid. 268, § 84.

The counsel for the appellee would also refer the Court to the following authorities on the point of interest.

1. Interest is not recoverable for unliquidated damages, or on uncertain demands. Anonymous, 1 Johns. 315; *Newell* v. *Griswold*, 6 do. 44; *Holliday* v. *Marshall*, 7 do. 213; *Campbell* v. *Mesier*, 6 Johns. Ch. R. 24; *Consequa* v. *Fanning*, 3 do. 602. In the case of *Reid* v. *Rensselaer Glass Factory*, 3 Cowen, 436, the Court remark "that interest is allowed, 1. Upon a special agreement; 2. Upon an implied promise to pay it; 3. Where money is withheld against the will of the owner; 4. By way of punishment for any illegal conversion or use of another's property; 5. Upon advances of cash, on the authority of *Liotard* v. *Graves*," 3 Caines, 234, which is the only case we find sustaining this latter doctrine. *Shewel* v. *Givan*, 2 Blackf. 314; *Gilpin* v. *Consequa*, 2 Peters' Dig., title "*Interest*," 531, § 16; *Youqua* v. *Nixon*, Ibid. § 18; *Evarts* v. *Nason's Estate*, 11 Verm.

128; Rev. Stat. chap. 54, title "*Interest*," § 2. In the case referred to from 3 Cowen, the Court in giving their opinion remark, "that there is no subject in the whole range of the English law, on which the authorities are so little in harmony with each other as on that of interest; and the American authorities are scarcely less contradictory. It may now, however, be considered as settled in England, that no interest is recoverable upon money lent, money had and received, or paid, laid out and expended without an express contract for its payment, or proof that the money has actually been used by the defendant, or of special circumstances, from which an agreement to pay interest may be inferred." Page 420.

It is further contended that the circumstances of this case do not show any right in Buckmaster to make Grundy his debtor, by the advances of money for the purpose of making improvements on the land.

If, however, Buckmaster has suffered any damage from the failure of Grundy to advance his $2,500, how are those damages to be measured? We contend this to be the true rule. If the expenditure of the $2,500 by Grundy would have enhanced the value of the premises, such enhanced value would be the measure for Buckmaster's damages, he having expended his $2,500. If the further expenditure of $2,500 by Grundy would not have enhanced the value of the premises, then Buckmaster's damages are merely nominal.

The Opinion of the Court was delivered by

CATON, J. Buckmaster and Prickett purchased of Thomas Carlin certain lands on the Mississippi river, called Point Ferry, for $4,000, which they secured by notes and mortgage on the premises. Afterwards, and on the 9th of January, 1819, they entered into a contract with William Grundy, the ancestor of the present defendant, by which he was to be let into the purchase upon equal terms with themselves. At that time, Buckmaster gave Grundy a bond, whereby he agreed to convey to Grundy one third of the premises within a given time, and Grundy gave to Buckmaster a bond, binding himself to pay one third of the purchase money of the premises as

the notes should fall due respectively. It was the intention of the parties to lay off a town upon the premises, establish a ferry, &c. In pursuance of this object, they all three entered into a sort of mutual bond on the same day, whereby each bound himself to the other to expend, in erecting good substantial buildings in the town, $2,500. In the same instrument, it was also agreed that each should pay an equal part of all the necessary expenses about the town, ferry and roads. As a bonus for being admitted into this enterprize on equal terms with the other proprietors, Grundy gave to Buckmaster $100 in cash, and his note for $300. Grundy soon after went to Kentucky, where he resided, and never paid any further attention to the town. The $300 note was assigned by Buckmaster to Prickett, and by Prickett to one Gaither, who sued Grundy on the note, and obtained judgment in Kentucky for the amount. Grundy then filed a bill in Chancery in Kentucky against Gaither, Buckmaster and others, and obtained a decree perpetually enjoining that judgment, and declaring the two bonds between Buckmaster and him void. That decree contains several other provisions, but as Buckmaster was never served with process in that cause, and never appeared, or in any way submitted to the jurisdiction of that Court, we do not think it necessary to take any further notice of it, as Buckmaster was not bound, nor were his rights in any way affected by it. There is nothing now before us which can be influenced in the least by that decree.

In October, 1829, Buckmaster recovered a judgment in the Madison Circuit Court against Grundy, for $1,767·82, on the bond given by Grundy for the payment of his proportion of the purchase money. This judgment still remains unsatisfied, nor can it be made from the estate of Grundy in this State.

In October, 1836, Grundy obtained a judgment against Buckmaster, in the Johnson Circuit Court, for $3,562, on the bond for a deed given by Buckmaster to Grundy. This judgment Grundy was proceeding to collect.

Several other controversies existed between the parties, which have either been settled or disposed of by former de-

crees, of which no complaint is now made, so that it is unnecessary to refer to them here.

For the purpose of settling all these difficulties, and particularly to get relief against the judgment in Johnson county, which is alleged to be unjust, this bill was filed by Buckmaster.

I do not think any sufficient reason is shown for going behind this judgment. It does not appear that the judgment was obtained by fraud, or was the result of accident or mistake, such as will authorize the Court to go behind that judgment, and investigate the original cause of action on which that judgment was rendered.

The suit was regularly commenced, and the process duly served on the defendant, who employed an attorney, who appeared and defended the action. A trial was had, a verdict obtained, and a judgment rendered, which was afterwards affirmed in this Court. There is nothing to show that Buckmaster was deceived in relation to any fact, or that he was surprised by any unforeseen circumstance, or that any mistake was made prejudicial to his interest. Although we may be entirely satisfied, from the evidence, that the judgment was wholly unjust, as was most probably the case, yet the public good requires that there should be certainty and stability in the judgments of the Courts; and unless they have been obtained by fraud, or some misfortune has intervened, without the negligence or fault of the party complaining, no Court can inquire into their correctness in a collateral proceeding. Such was not the case here, and the judgment must be permitted to stand.

It would seem hardly to admit of doubt that Buckmaster's judgment against Grundy for $1,767·82 should be set off against Grundy's judgment. The case shows that he has no means of collecting it of the estate of Grundy, and unless this set-off is made, it must be lost. The rules of Equity require, under such circumstances, at least, that the set-off should be allowed.

Buckmaster claims that he is entitled to large allowances as damages against Grundy for the breach of the bond or agreement by which each of the proprietors bound himself to expend

$2,500 in buildings, &c., and to bear an equal proportion of the expenses about the town, ferry and roads. Whatever those damages are, most undoubtedly should be allowed. In the Court below, an allowance was made for damages on this agreement for $1,415, which the complainant insists was not enough. He also claims that interest should be allowed upon those damages.

This instrument seems to contain two separate contracts, distinct in their nature and objects, although relating to the same subject matter, and between the same parties.

The rule of damages for the breach of the agreement, whereby Grundy bound himself to expend the $2,500, &c., will not be to adopt the amount or any certain portion of it, which Buckmaster has expended in erecting buildings in the town, but rather, how much has he been damnified by reason of not having the buildings erected in the town, which Grundy was bound to build? How much more would Buckmaster have realized from his interest in the premises had those buildings been erected, than he has now? We all know this must have depended upon the exigencies of the times, the caprice of individuals, and the confidence of the public, and particularly of speculators in the town, quite as much as upon the intrinsic value which those buildings would have added to the place. These buildings were not intended for the permanent use of the proprietors, but rather to bring the town into maturity, to improve its appearance and make the property saleable. Although Buckmaster and Prickett expended more than they had agreed to in this kind of improvements, yet this was not sufficient to invite purchasers, and whether an additional expenditure of $2,500 would have accomplished that object, it is impossible ever to know with certainty. Upon this subject, as might well be expected, no two will agree; some supposing that the fulfilment of the agreement on the part of Grundy would have enabled the proprietors to have realized a handsome profit, while others suppose that no reasonable amount of expenditure could ever have brought the town into notice. Upon this subject I am inclined to agree with those who think that this

additional expenditure might have been of most essential service in producing a favorable result to this enterprise. Buckmaster and Prickett in good faith expended the whole $5,000 which they had agreed to lay out there, which was designed for the mutual benefit of all three of the proprietors, while Grundy was away paying no attention to the business in person, nor aiding the enterprise by the expenditure of his money, as he had agreed to do. He was as much bound to endeavor to advance the interests of all, as the others were, and it seems hard indeed, if, after Buckmaster has expended so much time and money, in trying to promote the interests of all, now that the enterprise has entirely failed and all is gone, he shall not only be compelled to lose nearly all of his expenditure, but pay a large amount to Grundy, who, in utter disregard of his solemn agreement, did nothing. The very proposition seems revolting to a sense of justice, and yet I fear that in consequence of this Johnson county judgment, behind which we have no legal warrant for going, we shall be compelled in some measure to do so. On the trial of that cause he should have made his defence, but it is too late now. When we see that Buckmaster and Prickett had in the utmost good faith expended a large amount of money for the benefit of Grundy as well as themselves, and even more than they had agreed to, and Grundy had done nothing as he had agreed, and the enterprise finally failed, we may well listen with incredulity when it is urged that this breach of the contract on the part of Grundy was not instrumental in that failure. Nay, we might well be authorized to say, that it was mainly instrumental in producing that important result. Upon the whole, I think the amount allowed by the Circuit Court is quite small enough for the breach of the agreement by Grundy, in not expending the money which he was bound to do. As this, however, is an assessment of unliquidated damages, interest cannot be allowed upon it. It is not for the money paid by Buckmaster for the use of Grundy, but it is only for damage sustained for want of the improvements which Grundy agreed to make.

Under the second agreement in this instrument, the rule

may be different. There each party agrees to pay an equal proportion of all the necessary expenses about the town, ferry and roads. Under this agreement, I have no doubt if one advanced more money than his proportion in payment of these expenses, that it was so much money advanced for the use of the other parties. Over and above the $2,500 which each was bound to expend in erecting buildings, the evidence shows that Buckmaster and Prickett expended a large amount about the town, ferry and roads, an equal proportion of which each party was bound to pay. The portion which Grundy agreed to pay was not paid by him, but was paid by Buckmaster and Prickett for him and to his use. Upon this, according to the rule laid down in 3 Cowen, 393, Buckmaster is entitled to interest on his proportion.

It now remains to be determined what Buckmaster is entitled to recover for money paid for the use of Grundy under this latter branch of the agreement. Upon this subject, also, the evidence is very contradictory. The items properly chargeable to this account are, the timber for a bridge across Wood river, the clearing of a road from that river to the town, the money expended on account of the ferry, the expenses of laying off the town, and in fine, all of the expenses about the town, over and above the $2,500 which each was bound to expend.

The expenses of surveying and laying off the town was about $150 which was paid by Buckmaster alone. This appears from the deposition of Robinson, the surveyor. Buckmaster and Prickett expended at the least, $1,000 in erecting the ferryman's house and other buildings in the town, over and above the $5,000 which they together had agreed to expend there. This, of course, should be brought into this account. Thus far the evidence is very satisfactory, but not so with the other items. One witness thinks that the opening of the road and getting out the timber for the bridge must have cost from $400 to $500. Another thinks that such a bridge as was contemplated, would have cost from $350 to $400. Other witnesses think that the expense of opening the road must have cost from $40 to $50, but ex-

press no opinion about the bridge. I think from the evidence altogether, a fair allowance for the road and bridge will be $400. In relation to the expenses of the ferry, the evidence is still more unsatisfactory. Pinkard says he knows there was a ferry there, and that $500 would go but a very little way in establishing and running a ferry there in 1819. What boats were ever procured by Buckmaster and Prickett for the use of the ferry, is nowhere satisfactorily shown. Some never saw any there but a skiff; others saw a keelboat or barge used for a ferryboat worth from $300 to $400. It is certain that they had a barge and a flatboat in their service. Judging from the evidence, these were sometimes used for ferrying and sometimes for transporting rock from Alton. Mr. Carlin thinks that $100 should have furnished the ferry with all necessary boats at that time, and if they bought more expensive boats than were necessary for the ferry, Grundy ought not to be charged with such unnecessary expenditures. One hundred dollars, therefore, may be safely set down as the expenses of the ferry. This makes $1,500 advanced by Buckmaster and Prickett for the use of the concern in expenses about the town, ferry and road, and consequently one sixth of that was advanced by Buckmaster for Grundy. In addition to that, Buckmaster alone advanced for the benefit of all, $150 for the laying off and surveying of the town. One third of that was advanced for the use of Grundy, making in all $300 advanced by Buckmaster on account of and for the use of Grundy. This advance must have been made as early as the forepart of the year 1825, upon which, therefore, he will be entitled to interest for twenty seven years.

Upon Grundy's judgment against Buckmaster for $3,562, interest must be computed since October, 1830, making principal and interest $7,052·76. To be set off against this, there is the judgment of Buckmaster against Grundy for $1,767·82 with interest since October, 1829, amounting now to $3,641·71, also for damages assessed for the breach of the agreement of 9th January, 1819, without interest, $1,415; also for money advanced, the sum of $300, with interest

thereon, for twenty seven years, making the sum of $786. The aggregate amount to which Buckmaster is thus found to be entitled as against Grundy is $5,842·71, which must be set off against so much of Grundy's judgment and interest, the balance of which he will be allowed to collect.

There is another portion of this decree which must be reversed. Buckmaster is decreed to perform specifically his bond to Grundy for the conveyance of one third of this land. That was manifestly improper. Grundy has already recovered damages for the breach of this agreement, which amounuts, with the interest, to the sum of $7,052·76; and while he insists upon and gets the benefit of these damages, he cannot at the same time claim to have the condition of the bond specifically executed. It is true that Buckmaster in his bill offers to convey the land, but that was done under the supposition that he could get relief from the judgment in Johnson county. As that cannot be done to the extent prayed for, we must give him such relief as the case which is made in his bill, and sustained by the proof, entitles him to. This portion of the decree must be reversed and a decree entered here consistently with the principles above laid down. Buckmaster must recover his costs in this Court and the Court below, as was there adjudged, which he may have allowed upon the execution to be issued upon the judgment in the Johnson Circuit Court for the residue.

*Decree reversed.*